UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LUIZ A. CASANOVA, JR.,
    *Plaintiff*,
v.

ROLLIN COOK *et al.*,
    *Defendants*.

No. 3:20-cv-01366 (JAM)

**INITIAL REVIEW ORDER DISMISSING COMPLAINT
PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Luiz A. Casanova is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against several DOC employees alleging that the defendants were deliberately indifferent to his health and safety under the Eighth Amendment, that they violated his rights under the Equal Protection Clause, and that they discriminated against him in violation of Title VII of the Civil Rights Act of 1964. Because Casanova does not allege facts that give rise to plausible grounds for relief, I will dismiss the complaint without prejudice.

**BACKGROUND**

The following facts as alleged in Casanova's second amended complaint and the documents attached to it are accepted as true for the purposes of initial review only.[1] Casanova names seven defendants in their individual and official capacities: Commissioner Rollin Cook, District Administrator Scott Erfe, Warden Allison Black, Deputy Warden Denise Walker, Captain Linen, Lieutenant Lewis, and Lieutenant Hebert.[2]

---

[1] Doc. #11 at 1.
[2] *Id.* at 2-3 (¶¶ 7-12).

1

On or about December 27, 2019, Casanova was assigned to a single cell in the Foxtrot Unit of the New Haven Correctional Center ("NHCC").[3] His cell was located "across" from the cell of another inmate, Joseph Murphy.[4] At some point, Murphy requested a cell transfer away from Casanova because of Murphy's discomfort with Casanova's sexuality and gender expression.[5]

Prior to December 30, 2019, Casanova and Murphy informed correctional officials of a "situation" between them and that Murphy wanted to move cells, but no steps were taken even though Casanova said he feared for his safety and even though officials were aware that Murphy had a history of violence.[6] On December 30, 2019, Casanova gave both a verbal and a written request to District Administrator Erfe while Erfe was on a facility tour with Captain Linen, stating in substance that Casanova was being discriminated against and that his requests had gone ignored.[7] Erfe read the request and gave it to Linen, but no action was taken.[8]

On that same day, Murphy informed Lieutenant Lewis that he had "serious issues" living directly across from Casanova.[9] While Lewis encouraged Murphy to avoid conflict with Casanova, no further action was taken.[10]

Later that day, while Lieutenant Hebert was serving as the unit-assigned correction officer, Hebert got into a heated argument with Murphy.[11] During or immediately after the

---

[3] *Id.* at 4 (¶ 18).
[4] *Id.* at 5 (¶ 22).
[5] *Id.* at 4 (¶ 16), 5 (¶ 19).
[6] *Id.* at 5 (¶¶ 19-20).
[7] *Ibid.* (¶ 21); *id.* at 20 (inmate request form).
[8] *Id.* at 5 (¶ 21).
[9] *Ibid.* (¶ 22).
[10] *Ibid.*
[11] *Ibid.* (¶ 23).

argument, Murphy attacked Casanova in the Foxtrot Left dayroom without any provocation from Casanova.[12] Murphy hit Casanova and also kicked him in the face and torso area.[13]

Arriving staff ordered a Code Blue and told Murphy to stop, but Murphy disregarded all verbal directions to stop the attack.[14] Hebert witnessed the attack but did nothing, did not issue a report, and was not included in the "incident package."[15] Duty Officer Warden Black was notified of the incident shortly after 5:00pm that day.[16]

Immediately following the attack, Casanova was taken to the hospital unit for medical treatment for facial pain, contusion to his right eye, a visible laceration to the bridge of his nose, facial abrasion, a swollen forehead, and a slightly chipped tooth.[17] While the medical report states that Casanova was seen by APRN Maryellen Z. Silva, Casanova claims he never met with her.[18] Casanova was in severe pain that night and in the following days.[19] Despite the severity of Casanova's injuries and the resulting excruciating pain and suffering, Casanova was given only Motrin and ice.[20] It was recommended that Casanova remain in the infirmary due to the severity of his injuries, but he refused and requested to be sent back to the general population because the medical care was inadequate and unprofessional.[21]

X-ray images were taken the next day, on December 31, 2019.[22] Although Casanova's pain did not subside, he was not given stronger pain medication.[23]

---

[12] *Id.* at 6 (¶ 24).
[13] *Ibid.* (¶ 26).
[14] *Ibid.*
[15] *Ibid.* (¶ 25).
[16] *Id.* at 8 (¶ 37).
[17] *Id.* at 6 (¶ 27).
[18] *Ibid.* (¶ 29).
[19] *Id.* at 7 (¶ 31)
[20] *Ibid.* (¶ 30)
[21] *Ibid.* (¶¶ 30-31).
[22] *Ibid.* (¶ 32).
[23] *Ibid.* (¶ 33).

Casanova signed a waiver declining to pursue criminal charges against Murphy on the belief that he could press charges at a later point, knowing the amount of time Murphy would be incarcerated if convicted.[24] Murphy was issued a disciplinary report and served seven days of punitive segregation.[25]

Casanova continued to suffer from migraine headaches, nightmares, dizziness, and pain more generally from the attack.[26] The assault exacerbated his existing mental health diagnoses of social anxiety, depression, PTSD, and emotional distress.[27]

Following the attack, unnamed prison officials spread rumors disclosing Casanova's sexual orientation.[28] While he recovered, Casanova's repeated movement throughout the facility caused him "humiliation, fear, anxiety, harm to reputation, and more mental and emotional injury."[29]

Casanova was placed in a double cell alone as of the day of the assault due to a "bias[ed] classification system" that makes him the target of harassment.[30] Casanova alleges that the DOC administration promotes and encourages "hegemonic conceptions of masculinity" which enable "homophobic behavior," leading to assaults on Casanova.[31]

On January 3, 2020, Casanova wrote to Commissioner Cook to file a grievance regarding the discrimination and Murphy's assault.[32] On January 8, 2020, Deputy Warden Walker responded to one of Casanova's multiple requests, stating that "cell moves are not made by

---

[24] *Id.* at 8 (¶¶ 38-39).
[25] *Ibid.* (¶ 40).
[26] *Id.* at 9 (¶ 43).
[27] *Ibid.* (¶ 44).
[28] *Ibid.* (¶ 45).
[29] *Ibid.*
[30] *Ibid.* (¶ 46).
[31] *Ibid.* (¶ 42).
[32] *Id.* at 10 (¶ 47).

4

inmate requests, but strictly due to facility needs."[33] On January 10, 2020, Walker replied to the letter sent to Cook, stating again that there is no single cell status list at the correctional center and that there was no discrimination against Casanova.[34]

On January 13, 2020, Casanova and Murphy were each transferred to a different location: Casanova to the Hartford Correctional Center and Murphy to the Bridgeport Correctional Center.[35] Casanova filed a "Level 1" grievance on January 20, 2020, with an informal request, which was returned by Linen on March 10, 2020.[36] It was marked as "return without disposition" for a failure to request a specific action sought from the grievance, and dated on February 20, 2020.[37]

Casanova then submitted his corrected Level 1 grievance on March 11, 2020, in accordance with DOC deadlines, but the disposition was not physically returned until July 1, 2020, despite being dated June 1, 2020.[38] On July 1, 2020, Casanova completed a "Level 2 Grievance Review," attempting to formally exhaust his remedies, but DOC administrative staff attempted to disregard the grievance.[39] On July 2, 2020, Casanova sent a letter directly to the then-assigned District Administrator, Angel Quiros, to attempt to resolve the systemic problem involving the handling of prisoner grievances.[40]

Casanova has now filed this action. In his amended complaint, Casanova alleges that the defendants were deliberately indifferent to his health and safety in violation of the Eighth

---

[33] *Ibid.* (¶ 48).
[34] *Ibid.* (¶ 49), *id*. at 54 (letter response from Deputy Warden Walker).
[35] *Id.* at 10 (¶ 50).
[36] *Id.* at 10-11 (¶¶ 51-52).
[37] *Id.* at 10 (¶ 51), 56 (return of grievance without disposition).
[38] *Id.* at 11 (¶¶ 52-53).
[39] *Ibid.* (¶ 54).
[40] *Ibid.* (¶ 55); *id*. at 57-59 (letter to Administrator Quiros).

Amendment.[41] He also brings a Fourteenth Amendment equal protection claim as well as a claim of sex discrimination in violation of Title VII of the Civil Rights Act of 1964.[42]

### DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).[43]

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Eighth Amendment deliberate indifference to health and safety*

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. The Supreme Court has long recognized

---

[41] *Id.* at 12 (¶ 57).
[42] *Id.* at 14 (¶¶ 66, 68).
[43] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm to a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

A deliberate indifference claim under the Eighth Amendment has two requirements. First, the prisoner must allege that he was subject to an objectively serious risk of harm or serious medical need, as distinct from what a reasonable person would understand to be a minor risk of harm or minor medical need. The objective component requires no less than "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (quoting *Hathaway v. Coughlin*, 37 F.3d 33, 66 (2d Cir. 1994)).

Second, the prisoner must allege that a defendant prison official acted with an actual awareness of a substantial risk that serious harm to the inmate will result. *See Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012). The official must have acted more than merely negligently but instead with a subjective state of mind that is the equivalent of criminal recklessness. *See Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019).

Casanova has not alleged enough to satisfy either the objective or subjective elements for an Eighth Amendment claim. As an initial matter, he does not allege facts to show that conditions at NHCC involved an institution-wide high risk of harm to him, much less that such institution-wide risk was actually known to any of the prison official defendants. *Compare Farmer*, 511 U.S. at 842–43 (noting that "if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must

have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk").

The only risk that Casanova identifies is from Murphy. But as to Murphy, Casanova alleges no more than generalized concerns that were expressed to prison officials about tension between him and Murphy.[44] Beyond a conclusory allegation that Murphy had a violent history (which is typical of many persons in prison), he does not allege any specific threat or that prison officials were ever told that Murphy was threatening to harm him. This case differs from other cases I have seen where prison officials were told of a specific threat. *See Awad v. Moskites*, 2019 WL 109336, at *4 (D. Conn. 2019) (plaintiff stated plausible Eighth Amendment claim based on allegation that official failed to act after plaintiff told him that another inmate was threatening him and then was eventually assaulted); *Ziemba v. Lajoie*, 2016 WL 5395265, at *4 (D. Conn. 2016) (genuine fact issue that prison official was deliberately indifferent where cell mate specifically threatened plaintiff and had known history of assaulting cell mates).

Nor is this a case where Casanova was placed in the *same cell* with a dangerous cell mate, such that prison officials would likely know that a tense relationship could far more easily escalate into a physical assault. *See Awad, supra; Ziemba, supra.* Casanova and Murphy were in separate cells (albeit "across" from one another in some unspecified way), and the assault at issue took place in a prison common area.

In his communications with Erfe, Linen, and Lewis, Casanova alleges only that he raised generalized concerns for his safety by informing "officials of [the] situation between [Murphy and himself]" and requesting that the two be separated.[45] As one district court has observed, "an

---

[44] Doc. #11 at 5, 12 (¶¶ 19-22, 57).
[45] *Id*. at 5 (¶¶ 19-20). The written request given to Erfe also states only general complaints of safety threats, focusing primarily on discrimination from DOC staff. *Id.* at 20.

8

inmate's communications about generalized safety concerns or vague concerns of future assault by unknown individuals are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." *Anselmo v. Kirkpatrick*, 2019 WL 2137469, at *4 (N.D.N.Y. 2019) (collecting cases).

And still another district court has noted that a prisoner's "vague and unsubstantiated concerns" about a risk to his safety are "not sufficient to make clear to a reasonable officer that preventative action was constitutionally required." *See Velez v. City of New York*, 2019 WL 3495642, at *4 (S.D.N.Y. 2019) (further noting that "a number of courts in this district have found that an inmate informing an officer about a nebulous or untethered fear does not put an officer on notice that the inmate is at risk of attack," in contrast to "[t]hose cases which have found officers potentially liable for failing to prevent an attack [which] involved clear and specific threats against an inmate"). Because Casanova has not alleged that he or Murphy told Erfe, Linen, and Lewis of any threats, none of these defendants were deliberately indifferent to Casanova's safety.

As to defendants Cook, Black, and Walker, the complaint does not allege that they were put on notice of any risk of harm to Casanova before the assault by Murphy.[46] These defendants cannot be held liable merely on the basis of their supervisory positions absent evidence of personal knowledge and involvement in a violation of Casanova's constitutional rights. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

As to Lieutenant Hebert, the complaint fails to allege any prior knowledge on his part of a risk of harm. Instead, Casanova faults Hebert for failing to intervene in the assault by Murphy. But his allegations fall well short of showing that Hebert had a constitutional duty to intervene.

---

[46] *Id.* at 12 (¶¶ 57-58).

9

In the Second Circuit, the law is "clear that officers are under no obligation to put their own safety at risk by intervening in inmate fights." *Velez*, 2019 WL 3495642, at *5. Casanova does not allege any facts to show that Hebert could have individually and personally intervened to stop the ongoing assault without putting himself at risk.

Moreover, "in the context of an altercation, an inmate must show that ... the officer had a realistic opportunity to intervene and prevent the harm." *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 336 (S.D.N.Y. 2015). As Casanova acknowledges, a Code Blue was called, and several other correctional officials tried to intervene.[47] The complaint does not allege facts to show that Hebert individually had a reasonable opportunity to intervene apart from the intervention efforts of others, much less that Hebert acted with deliberate indifference to Casanova by not trying to intervene.

Casanova additionally alleges that he did not receive adequate treatment after the assault. But he does not allege how any of the named defendants were involved with or responsible for this alleged deficiency in treatment. Accordingly, Casanova has failed to allege facts to show that any of the defendants were deliberately indifferent to his serious medical needs after the assault.

### *Fourteenth Amendment equal protection*

Casanova claims that DOC staff violated his Fourteenth Amendment rights by classifying prisoners on the basis of sexual orientation and gender expression.[48] "The Equal Protection Clause . . . commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)

---

[47] *Id*. at 6 (¶ 26); 28-36 (incident reports).
[48] *Id.* at 14 (¶ 66). Though Casanova begins his Count Two cause of action with a discussion of the Due Process Clause of the Fourteenth Amendment, he seems to substantially state only an equal protection claim. *Id.* at 13 (¶ 63).

(quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state a valid equal protection claim, "a plaintiff must allege facts showing that the plaintiff was treated differently from similarly situated individuals and that the reason for the different treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Morgan v. Semple*, 2020 WL 2198117, at *19 (D. Conn. 2020) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).

The complaint is very vague about how Casanova has been disadvantaged because of his sexual orientation and gender expression. For example, he alleges a "bias[ed] classification system" and the proliferation of "hegemonic conceptions of masculinity" that enable "homophobic behavior."[49] To the extent that he alleges that he was put into a single cell because of his sexual orientation and gender characteristics, he does not explain how this harmed him; to the contrary, his complaint otherwise alleges that he is at risk from other prisoners, such that he should have no cause for complaint if the DOC protects him by placing him in a single cell rather than housing him with other prisoners—like Murphy—who might assault him. Beyond that, the complaint does not allege facts to show that any of the named defendants were personally involved with the alleged bias or discrimination. Accordingly, for lack of allegations that plausibly establish grounds for relief, I will dismiss Casanova's equal protection claim.

### *Title VII sex discrimination claim*

Casanova also alleges a Title VII sex discrimination claim against the defendants generally for sex-stereotyping and sexual objectification.[50] But Title VII only provides recourse to plaintiffs in the context of an employment relationship. *See* 42 U.S.C. § 2000e-2; *Vega v.*

---

[49] *Id*. at 8 (¶¶ 42, 46).
[50] *Id*. at 14 (¶¶ 67-69).

*Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). No employment relationship has been alleged. Accordingly, I will dismiss Casanova's Title VII claim.

## CONCLUSION

The Court DISMISSES the complaint without prejudice. Casanova's motions for orders (Docs. #16, #17) are DENIED as moot. The Clerk of Court shall close this case. If Casanova is able in good faith to allege additional facts that overcome the concerns stated in this ruling, then he may file a motion to re-open this action along with an amended complaint by **November 5, 2021**.

It is so ordered.

Dated at New Haven this 6th day of October 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge