UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LUIZ A. CASANOVA, JR.,
    *Plaintiff*,

v.

ROLLIN COOK *et al.*,
    *Defendants*.

No. 3:20-cv-01366 (JAM)

**SECOND INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Luiz A. Casanova, Jr., is a prisoner in the custody of the Connecticut Department of Correction (DOC). He filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against several DOC employees for violations of his rights under federal law. I previously issued an initial review order dismissing Casanova's complaint without prejudice for failure to state a claim. Casanova has now filed a third amended complaint alleging additional facts that are sufficient to state a deliberate indifference claim under the Eighth Amendment and equal protection claim under the Fourteenth Amendment against one defendant. I will therefore re-open the case to allow those claims to proceed.[1]

**BACKGROUND**

The following facts alleged in Casanova's third amended complaint are accepted as true for the purposes of initial review only.[2]

---

[1] Casanova filed his third amended complaint on February 22, 2022. The Court regrets the substantial delay in the issuance of this second initial review order.

[2] Doc. #38 (third amended complaint). This complaint contains considerably less factual detail than Casanova's second amended complaint. *Cf.* Doc. #11. "It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Shannon v. Venettozzi*, 749 F. App'x 10, 13 (2d Cir. 2018) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Although Fed. R. Civ. P. 10(c) permits incorporation by reference, the third amended complaint incorporates only the attachments filed along with Casanova's second amended complaint, not any of the allegations therein. *See* Doc. #38 at 3 (¶ 6). I will therefore discuss the allegations in Casanova's second amended complaint only insofar as they provide necessary context for the allegations in the operative third amended complaint.

1

Casanova names seven defendants in their individual and official capacities: Commissioner Rollin Cook, District Administrator Scott Erfe, Warden Allison Black, Deputy Warden Denise Walker, Captain Linen, Lieutenant Lewis, and Lieutenant Hebert.[3] Casanova generally alleges that, "due to his gender expression and sexual orientation," these defendants failed to protect him from a brutal beating at the hands of an inmate with a violent history towards correctional officers.[4]

On or about December 27, 2019, Casanova was assigned to a single cell in the Foxtrot Unit of the New Haven Correctional Center.[5] His cell was located across from the cell of another inmate, Joseph Murphy.[6] At some point, Casanova asked prison officials to move him out of Murphy's direct line of vision.[7]

On December 30, 2019, Casanova submitted a written request to District Administrator Erfe, stating that prison administrators were discriminating against Casanova as an "openly bisexual masculine man" by "enabling staff and inmates to commit hate crime[s] toward me."[8] Erfe read the request and gave it to Captain Linen to resolve the issue.[9] But Casanova claims that prison administrators did not take his warnings seriously because of his "gender expression disposition."[10]

On that same day, Murphy specifically informed Lieutenant Lewis that "he was going to 'beat that faggot's ass if you don't move one of us,'" to which Lieutenant Lewis responded, "so

---

[3] Doc. #38 at 1.
[4] *Ibid.*
[5] Doc. #11 at 4 (¶ 18).
[6] *Id.* at 5 (¶ 22).
[7] Doc. #38 at 2 (¶ 2).
[8] *Id.* at 2 (¶ 3); Doc. #11 at 20 (inmate request form).
[9] Doc. #38 at 2 (¶ 3).
[10] *Ibid.* (¶ 4).

fuck him up."[11] According to Casanova, DOC officials generally "respect violence" and encourage violence between inmates.[12]

Correctional officers were aware that Murphy had an especially violent history with prison staff and that he should not have been serving food because his tickets for past infractions had not cleared.[13] During second shift feeding, Officer Hebert got into a heated argument with Murphy and did not allow him out to serve the food.[14]

Murphy then took his frustration and anger out on Casanova by attacking him in the Foxtrot Left Dayroom.[15] Casanova alleges that Murphy "beat [him] unconscious."[16] Prison records indicate that Casanova suffered "significant injuries to his head," including bruising to his right eye, a laceration to the bridge of his nose, and superficial abrasions to his forehead.[17] Hebert was present during the assault but did not mention it in an incident report or provide a statement.[18]

On January 3, 2020, Casanova wrote to Commissioner Cook to complain of being discriminated against and subjected to Murphy's assault.[19] Casanova also submitted an inmate request form to Deputy Warden Walker alleging that he was discriminated against when his cell mate was relocated "to prevent a law suit."[20] On January 8, 2020, Deputy Warden Walker

---

[11] *Id*. at 3-4 (¶¶ 7, 12). Casanova omitted these allegations from his second amended complaint, which stated only that after "Murphy spoke with Unit Manager[] Lieutenant Lewis about his serious issues with living directly across from plaintiff," Murphy "was encouraged to avoid conflict with plaintiff, [but] no moves were made and requests weren't taken seriously." Doc. #11 at 5 (¶ 22).
[12] Doc. #38 at 4 (¶ 11).
[13] *Id*. at 3-4 (¶¶ 8, 12).
[14] *Id*. at 3 (¶ 8).
[15] *Ibid.*; *see also* Doc. #11 at 22 (incident report describing assault in which Murphy delivered "closed fist strikes and kicks to the face and torso of inmate Casanova"); *id*. at 28 (supplemental incident report stating that Murphy "dragged Casanova across the dayroom floor and began to kick [him] several times in the head").
[16] Doc. #38 at 3 (¶ 8).
[17] Doc. #11 at 33 (shift commander overview and notification sheet); *see also id.* at 21 (critical incident brief describing assault); *id*. at 24, 26 (supplemental incident reports); *id*. at 40 (medical incident report).
[18] Doc. #38 at 3 (¶ 8).
[19] Doc. #11 at 50-52.
[20] *Id*. at 53.

responded to the inmate request form, stating that "cell moves are not made by inmate requests, but strictly due to facility needs."[21] On January 10, 2020, Walker additionally replied regarding Casanova's letter to Cook, stating that there was no discrimination by staff against Casanova and that Murphy had "acted on his own volition."[22]

Casanova alleges that the defendants were aware of the threats Murphy made against him before the assault and should have intervened to protect him.[23] He claims that their failure to protect him violated his rights under the Eighth Amendment, the Equal Protection Clause, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

I previously issued an initial review order dismissing Casanova's second amended complaint. *See Casanova v. Cook*, 2021 WL 4711459 (D. Conn. 2021). With respect to Casanova's Eighth Amendment deliberate indifference claim, I concluded that he had not alleged "any specific threat or that prison officials were ever told that Murphy was threatening to harm him." *Id*. at *4. I further determined that he had not alleged any personal involvement as opposed to mere supervisory liability on the part of defendants Cook, Black, and Walker. *Id*. at *5. As to Hebert, I concluded that Casanova had not alleged he had "any prior knowledge … of a risk of harm" or that he "could have individually and personally intervened to stop the ongoing assault without putting himself at risk." *Ibid*. I dismissed Casanova's equal protection claim because he did not allege any prejudicial treatment at the hands of the defendants on the basis of his sexual orientation and gender expression. *Id*. at *6. And I dismissed Casanova's Title VII claim because he had not alleged that any of the defendants employed him. *Ibid*. But I invited Casanova to file a

---

[21] *Ibid*.
[22] *Id*. at 54.
[23] Doc. #38 at 1, 5.

motion to re-open and amended complaint "if he believed that he could allege additional facts that overcome the concerns stated in the Court's ruling."[24]

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).[25]

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Eighth Amendment deliberate indifference to health and safety*

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a

---

[24] Doc. #20.
[25] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

substantial risk of serious harm to a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

A deliberate indifference claim under the Eighth Amendment has two requirements. First, the prisoner must allege that he was subject to an objectively serious risk of harm or serious medical need, as distinct from what a reasonable person would understand to be a minor risk of harm or minor medical need. The objective component requires no less than "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).

Second, the prisoner must allege that a defendant prison official acted with an actual awareness of a substantial risk that serious harm to the inmate will result. *See Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012). The official must have acted more than merely negligently but instead with a subjective state of mind that is the equivalent of criminal recklessness. *See Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019).

Casanova has now plausibly alleged that Lieutenant Lewis acted with deliberate indifference to a substantial risk that he would suffer serious harm from Murphy. In particular, Casanova alleges that Murphy had a reputation for being especially violent in prison and that he specifically told Lieutenant Lewis regarding Casanova that "he was going to 'beat that faggot's ass if you don't move one of us.'"[26] He further alleges that Lieutenant Lewis responded to this threat *not* by discouraging Murphy from assaulting Casanova or by separating the two inmates, but instead by telling Murphy "so fuck [Casanova] up."[27] This alleged incitement of an inmate with a known propensity for violence in prison plausibly shows deliberate indifference on the

---

[26] Doc. #38 at 3 (¶ 7).
[27] *Id.* at 4 (¶ 12).

6

part of Lieutenant Lewis to a substantial risk that Murphy would accept his invitation and seriously harm Casanova. *See Snider v. Dylag*, 188 F.3d 51, 55 (2d Cir. 1999) (prison official was deliberately indifferent when he declared "open season" on an inmate "to ensure that whoever wanted to abuse [the inmate] would know that he could proceed unimpeded"); *Morgan v. Semple*, 2016 WL 11670294, at *6 (D. Conn. 2016) (prison officials were deliberately indifferent to an inmate's safety when they "identified [him] as a 'snitch' or pedophile to encourage other inmates to assault him" and then "failed to intervene to ensure his safety after learning of the threats"). Moreover, Murphy did in fact seriously harm Casanova during the assault by striking and kicking him in the head and torso in a manner that caused him significant injuries.

With respect to the remaining defendants, however, Casanova has not alleged any new facts to satisfy either the objective or subjective elements for an Eighth Amendment claim. In his communications with Erfe and Linen, Casanova alleges only that he sought to be "moved away from [the] direct line of vision of inmate Murphy."[28] He does not allege that he or anyone else informed these defendants of any specific threats made by Murphy such as the threat Murphy made to Lieutenant Lewis.

Nor does he allege that Murphy was placed in or otherwise allowed to enter his cell. *See Frye v. Wilt*, 2016 WL 6901374, at *6 (M.D. Pa. 2016) (defendants were deliberately indifferent in allowing another inmate with a "known penchant for sexual and physical violence" to transfer into the plaintiff's cell notwithstanding their "personal knowledge of the particular facts about [his] vulnerability" and his "specific requests that these defendants take steps to avoid unreasonable risks to his safety"), *report and recommendation adopted,* 2016 WL 6879752

---

[28] *Id.* at 2 (¶ 2).

(M.D. Pa. 2016). Absent a showing of a particular threat or risk, the mere denial of a request to change cells does not suffice to show deliberate indifference on the part of these defendants. *See Casanova*, 2021 WL 4711459 at *4.

As to defendants Cook, Black, and Walker, the third amended complaint does not contain any new allegations showing that they were put on notice of any particularized risk of harm to Casanova prior to the assault by Murphy. These defendants cannot be held liable merely on the basis of their supervisory positions absent evidence of personal knowledge and involvement in a violation of Casanova's constitutional rights. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

As to Lieutenant Hebert, the third amended complaint does not contain any new allegations showing that he had prior knowledge of a risk of harm from Murphy. Casanova faults Hebert and other corrections officers for not "locking [Murphy] up to cool down" after Hebert and Murphy "got in a combative argument" during the feeding shift."[29] Yet the complaint does not allege any facts showing that there were grounds to impose additional restraints on Murphy or that Hebert was specifically on notice that Murphy would direct his aggression at Casanova. Nor does the complaint allege any new facts to show that Hebert could have individually and personally intervened to stop the ongoing assault without putting himself at risk. *See Velez v. City of New York*, 2019 WL 3495642, at *5 (S.D.N.Y. 2019).

I will therefore allow Casanova's deliberate indifference claim to proceed only against Lieutenant Lewis. Casanova has not alleged a plausible claim for deliberate indifference against any other defendant.

---

[29] *Id*. at 3 (¶ 8).

### *Fourteenth Amendment equal protection*

Casanova claims that DOC staff violated his Fourteenth Amendment rights by classifying prisoners on the basis of sexual orientation and gender expression. "The Equal Protection Clause . . . commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state a valid equal protection claim, "a plaintiff must allege facts showing that the plaintiff was treated differently from similarly situated individuals and that the reason for the different treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Morgan v. Semple*, 2020 WL 2198117, at *19 (D. Conn. 2020) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).

The third amended complaint alleges that Lieutenant Lewis gave Murphy "special privileges" to attack Casanova because of Casanova's sexual orientation.[30] The complaint does not allege that Lieutenant Lewis himself used any derogatory terms in reference to Casanova's sexual orientation or that Lieutenant Lewis treated Casanova differently than any similarly situated prisoner of a different sexual orientation. *See Morgan*, 2020 WL 2198117, at *19.

Yet the complaint does allege that Lieutenant Lewis told Murphy that he should go ahead and assault Casanova after Murphy referred to Casanova as a "faggot."[31] As the Second Circuit recognized in *Snider v. Dylag*, *supra*, a prison official's advertisement that an inmate can be attacked with impunity violates the inmate's "Fourteenth Amendment right to be protected equally under the laws, notwithstanding his inmate status." 188 F.3d at 53–54. The complaint

---

[30] *Id*. at 4 (¶ 12).
[31] *Id*. at 3 (¶ 7).

therefore plausibly alleges that Lieutenant Lewis violated Casanova's right to equal protection when he "decided that [Casanova], for whatever reason, was not 'worthy' of [his] protection, and, worse still, … conveyed this sentiment to [Murphy], to ensure that [he] would know that he could proceed unimpeded." *Id*. at 55.

The third amended complaint does not add any new allegations showing that the other defendants subjected Casanova to discrimination on the basis of his sexual orientation and gender expression. Casanova claims that the defendants "had been made aware and provided with the knowledge of the risk [of violence from other inmates] based on the … PREA classification system … which asks for inmates' sexual orientation."[32] But Casanova does not identify any manner in which this system of classification prejudiced him; to the contrary, he claims that it served to notify the defendants that he was more likely to be attacked.

To the extent Casanova argues he was entitled to *additional* protection not afforded to other prisoners on the basis of his disclosed sexual orientation, the lack of such special treatment does not suffice to state an equal protection claim. *See Williams v. Washington*, 1997 WL 201579, at *2 (N.D. Ill. 1997) (rejecting inmate's "claim that he was denied 'equal protection' because he was not given extra protection as a non-gang member"). Moreover, to the extent Casanova further alleges that his safety concerns were not taken seriously due to his sexual orientation or gender expression, he has not alleged that any defendant other than Lieutenant Lewis was aware of a high institution-wide level of risk to inmates of his sexual orientation and gender expression or of any specific threats by other inmates against him. Accordingly, I will allow Casanova's equal protection claim to proceed only against Lieutenant Lewis.

---

[32] *Id*. at 4 (¶ 11).

10

*Title VII sex discrimination claim*

Casanova also renews his Title VII sex discrimination claim against the defendants. But he has not alleged any employment relationship, which is a prerequisite for claims under Title VII. *See* 42 U.S.C. § 2000e-2; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). Accordingly, I will dismiss Casanova's Title VII claim.

*Additional motions*

Casanova has filed a letter motion with the Court inquiring whether "at the permission of both the Judge and the defendant's counsel, can I make my 1983 claim a tort claim" and "would it be possible to file a tort claim for the same assault as in aforementioned section 1983 claim?"[33] The Court cannot give legal advice about what claims that Casanova should bring. If Casanova wishes to amend his complaint to state a tort claim, he should promptly file a motion for leave to file an amended complaint that sets forth with specificity any allegations that he believes support a tort claim and making clear what tort he believes was committed and by which defendant. Any such motion should be accompanied by a proposed amended complaint that fully sets forth all claims that Casanova has against all defendants. Therefore, the Court DENIES Casanova's letter motion to file a tort claim (Doc. #39) but without prejudice to the filing within 21 days of any motion to file an amended complaint that is accompanied by a proposed fourth amended complaint.

Casanova has also filed a motion seeking to adjust his demand for relief to $150,000.[34] The Court GRANTS this motion (Doc. #40).

---

[33] Doc. #39.
[34] Doc. #40.

*Appointment of counsel*

Lastly, the Court has previously denied without prejudice Casanova's motion to appoint counsel (Doc. #27). Now with the issuance of this second initial review order, Casanova is requested to file a renewed motion to appoint counsel if he continues to wish that *pro bono* counsel be appointed on his behalf.

## CONCLUSION

In light of the new allegations contained in the third amended complaint (Doc. #38), the Court RE-OPENS the case solely with respect to Casanova's deliberate indifference claim under the Eighth Amendment and equal protection claim under the Fourteenth Amendment against Lieutenant Lewis.

The Court therefore enters the following orders:

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain defendant Lieutenant Lewis's current work address, mail a waiver of service of process request packet containing the Complaint and this Order to him at that address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver requests on the thirty-fifth day after mailing. If Lieutenant Lewis fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)     **The Clerk shall** send Casanova a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     Defendant Lieutenant Lewis shall file his response to the complaint, either an answer or motion to dismiss, within **thirty (30) days** from the date the waiver forms are sent. If

he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. He may also include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **five months (150 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **six months (180 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. **Failure to do so can result in the dismissal of the case.** The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

It is so ordered.

Dated at New Haven this 6th day of February 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge